Jamie McGrady
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
425 G Street, Suite 800
Anchorage, Alaska 99501
(907) 646-3400
(907) 646-3480 fax

Attorney for Defendant

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                      Plaintiff,<br>  vs.<br>MICHAEL SAOFAGA, JR.,<br><br>                      Defendant. | Case No. 3:18-cr-00129-TMB-MMS-1<br><br>**DEFENDANT'S SENTENCING MEMORANUDM** |

Defendant, Michael Saofaga, Jr., by and through counsel Jamie McGrady, Assistant Federal Defender, hereby submits his sentencing memorandum. Sentencing currently is set for November 1, 2019, at 10:00 a.m., before the Honorably Timothy M. Burgess, United States District Judge for the District of Alaska. The Unites States Probation Office has prepared and filed a revised presentence investigation report (hereinafter "PSR") in this case, dated August 21, 2019. Mr. Saofaga makes the following comments and recommendations for sentencing.

**Unresolved Objections**

Mr. Saofaga pled guilty to the only count in the indictment: Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1), which is a Class C felony. As a preliminary matter, Ninth Circuit precedent requires the government to prove the requested enhancements by clear and convincing evidence. Normally, additional facts supporting imposition of a sentence enhancement

must be proved by a preponderance of the evidence. Commentary to U.S.S.G § 6A1.3. However, "when a sentencing factor has an extremely disproportionate effect on the sentence relative to the offense of conviction…a higher standard of proof may be required." United States v. Mezas de Jesus, 217 F. 3d 638, 642 (9th Cir. 2000) (internal citations omitted).

For example, in United States v. Hopper, the Ninth Circuit held that an enhancement resulting in a seven-level increase to a defendant's Total Offense Level must be proved by clear and convincing evidence, rather than a preponderance standard, since the enhancement increased the defendant's sentencing range from 24-30 months to 63-78 months. 177 F.3d 824, 833 (9th Cir. 1999). The court based that holding in particular on the "relative shortness" of the defendant's original sentence, and on the "extremely disproportionate impact" that the enhancement would therefore have. Id.

Similarly, in Mezas de Jesus, the defendant's sentence was increased nine levels based on a kidnapping for which he was never charged. Mezas de Jesus, 217 F.3d at 643. The sentencing range increased from 21-27 months to 57-71 months as a result of this enhancement, exposing the defendant to "a 36-44-month increase in imprisonment." Id. The Ninth Circuit held that because the enhancement had such a disproportionate impact on the defendant's sentence, the government was required to establish the kidnapping "by clear and convincing evidence before it [could] be used to increase Mezas de Jesus's sentence." Id.

The Ninth Circuit has "not set a bright-line rule for [when] the disproportionate impact test" applies, and instead looks "'at the totality of the circumstances,' without considering any one factor as dispositive."

As the two proposed enhancements are related and add a total of 10 levels to Mr. Saofaga's proposed guidelines, the clear and convincing standard should apply.

**A. Mr. Saofaga objects to the four-point enhancement at paragraph 20. He should not receive an enhancement under U.S.S.G. § 2k2.1(b)(6)(B).**

The PSR avers that Mr. Saofaga committed the offense of Assault in the Third Degree, in violation of Alaska Statute 11.41.220, a felony offense, by pointing the weapon towards officers and attempting to discharge the firearm. This conclusion is not supported by the discovery.

Alaska Statute 11.41.200(a)(1) states "a person commits the crime of assault in the third degree if that person recklessly places another person in fear of imminent serious physical injury by means of a dangerous instrument."

The evidence in this case does not support the enhancement. None of the law enforcement reports allege that Saofaga actually pointed the firearm *at a police officer*. At most, the discovery alleges that Saofaga raised the firearm toward the K9 officer, which does not amount to a felony under Alaska or federal statutes. Mr. Saofaga disputes this version of events and asserts that he did not raise the firearm while he was running away from his pursuers, some of whom were not dressed as police officers but rather were dressed in plain clothes. He had his back to his pursuers the entire time that he was running, and strenuously objects to any version of events where he raised a firearm towards law enforcement, because he would have, in all likelihood, been shot. Mr. Saofaga was not prosecuted for this conduct, and this allegation should not result in an increase to his guideline of several years.

//

//

**B. Mr. Saofaga objects to the six-point official victim enhancement pursuant to U.S.S.G. § 3A1.2(c)(1).**

The presentence report states that Mr. Saofaga is subject to a 6-point official victim enhancement pursuant to U.S.S.G. § 3A1.2(c)(1), because during his flight from the officers, Mr. Saofaga briefly turned around and lifted the firearm in the general direction of the police canine that was chasing after him. The K9 officer claims he could hear a mechanical action but the firearm was never discharged. The K9 officer and a nearby officer stated that they were in fear that the defendant was going to use the handgun to shoot the K9 and/or themselves.

The official victim enhancement under § 3A1.2(c)(1) applies:

> If, in a manner creating a substantial risk of serious bodily injury, the defendant or a person for whose conduct the defendant is otherwise accountable—
> **(1)** knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom.

U.S.S.G. § 3A1.2(c).

The application notes for this sentencing enhancement explain that the enhancement "applies in circumstances tantamount to aggravated assault." U.S.S.G. § 3A1.2(b) cmt. n. 5. Neither the note nor the guideline defines aggravated assault. Elsewhere in the Guidelines, aggravated assault is defined as "a felonious assault that involved (A) a dangerous weapon with intent to cause bodily injury (i.e., not merely to frighten) with that weapon; (B) serious bodily injury; or (C) an intent to commit another felony." See U.S. Sentencing Guidelines Manual § 2A2.2, cmt. n. 1 (parenthetical in original).

Here, the evidence is inadequate to show that Mr. Saofaga intended to inflict injury on the officers. He did not inflict serious bodily injury and his actions were not intended to commit

another felony. Moreover, because the enhancement applies to conduct directed at persons, the enhancement would not apply to assaults on police canines. The elements of aggravated assault have clearly not been established.

Even if one applies the common law definition of assault, Mr. Saofaga's conduct is insufficient to support the enhancement. For example, in United States v. Lee, 199 F.3d 16, 17 (1st Cir. 1999), the First Circuit upheld application of the enhancement to a defendant who struck two officers in the chest and struggled with them when they attempted to restrain him, all while repeatedly reaching for a loaded firearm that was in his waist area. The court applied the common-law definition of assault as either (1) attempted battery, i.e., an intended effort to cause bodily harm to another which falls short of success … regardless whether the intended victim knows of the attempt, or (2) any act intended to, and reasonably does, cause the victim to fear immediate bodily harm. Lee, 199 F.3d 16, 18 (1st Cir. 1999).

The court held that the elements of the first definition had not been shown, but that the elements of the second definition were established. In particular, the defendant had acted with knowledge that his actions were reasonably likely to cause fear by the officers because the officers were shouting about his efforts to reach the gun and trying to stop him. Id. The court reasoned that this "feedback" from the victims during the assault justified the enhancement. Id.

Similarly, in United States v. Olson, 646 F.3d 569, 574 (8th Cir. 2011) the Eighth Circuit relied on the common-law definition of assault announced in Lee to uphold the district court's application of the enhancement, where the district court found that the defendant had used the firearm to protect himself from apprehension by law enforcement and failed to drop the firearm

despite many opportunities. In particular, the defendant had also failed to respond to the officers' repeated orders to drop the weapon, instead bringing the gun up from between his knees. Id.

Even assuming that the common-law definition of assault governs the enhancement, application of the enhancement on the basis of the allegations in the presentence report is improper. In United States v. Juvenile Male, 930 F.2d 727, 728 (9th Cir. 1991), the court construed the elements of common-law assault and held that:

> An assault is committed by either [1] a willful attempt to inflict injury upon the person of another, or [2] by a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm.

Id. (citation omitted).

The evidence here is insufficient to satisfy either prong. There is no evidence that Mr. Saofaga attempted to commit a battery, i.e., willfully attempted to inflict injury upon another person. Nor is there proof that his actions were intended to communicate a threat of physical injury. Mr. Saofaga did not physically confront the officers or engage in a struggle. He did not disobey repeated commands to drop the firearm. The conduct was fleeting and brief. Indeed, the evidence does not indicate that he was subjectively aware that his actions would reasonably place the officers in fear of physical injury. Although the enhancement does not require proof that the defendant actively employed the firearm, the Ninth Circuit has declined to apply the enhancement even in cases where the defendant recklessly discharged a firearm while fleeing from law enforcement. United States v. Sampson, 41 F. App'x 112, 114 (9th Cir. 2002) (district court erred in application of § 3A1.2(b) where defendant did not intend to harm officer). The conduct in this case is far less serious and as a matter of law inadequate to justify the enhancement.

## SECTION 3553(a) FACTORS

United States Code, Title 18, Section 3553(a) requires this court to "impose a sentence sufficient but not greater than necessary, to comply with the purposes set forth in paragraph (2). Section 3553(a)(2) states that the purpose of a sentence is:

1. to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense;

2. to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and

3. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The statute further directs the court to consider the nature and circumstances of the offense and the history and characteristics of the defendant; the kinds of sentences available; the recommendation and policies of the United States Sentencing Commission and the Guideline; the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense. A brief discussion of relevant § 3553(a) factors follows.

### A. Nature and Circumstances of the Offense

This case originated when the Anchorage Police Department attempted to serve an arrest warrant on Mr. Saofaga for an outstanding parole violation. When he was approached as he exited a hotel, he only saw men in plain clothes and it was dark out. Mr. Saofaga's first instinct, when contronted, was to run. He recognizes that he is lucky to be alive today, and has the scars on his

legs to remind him of how reckless his behavior was. He possessed a firearm when he knew he was a prohibited person, and for that he now takes responsibility.

### B. History and Characteristics

Mr. Saofaga moved to Alaska from Samoa in 2014, after he graduated from high school. He had no prior arrests or convictions before he arrived in Alaska, but he found it hard to adjust to life in the city with no little family support. He would like to move back to Samoa to be near his family after he serves his time in this case.

### C. Health Issues

Mr. Saofaga has suffered from a number of health issues since his incarceration. He was diagnosed with Prostatitis, had a severe GI bleed due to an allergy to naproxen, and had surgery for a perforated gastric ulcer. He has been referred to a Urologist for further treatment. He has also been treated for severe back pain. A copy of his Department of Corrections medical file has been forwarded to probation for inclusion in the presentence report.

### D. Seriousness of the Offense, Deterrence, and Rehabilitation

Mr. Saofaga's longest sentence of incarceration to date was a three-year sentence for his only prior felony case, which involved a property offense. He served 24 months on that sentence. Although Mr. Saofaga has had prior arrests for cases that were ultimately dismissed, he only has four prior convictions: a misdemeanor shoplifting, operating a vehicle without insurance, two counts of theft in the second degree, and a misdemeanor Assault. He has no other convictions involving guns or violent felony convictions.

Similarly situated defendants have received sentences in line with Saofaga's request. Ernest Jacobbsen was a Criminal History Category V and returned fire into an occupied hotel. He

received a sentence of 30 months. (3:17-cr-158-SLG). Brent Hansen attempted to clear security at the airport with a stolen firearm. With a Criminal History Category V, he received a sentence of 34 months. (1:18-cr-03-TMB). Sean Murran broke into a home to steal home brew, then walked around downtown Hooper Bay looking for dogs to shoot, and ended up in a standoff with local law enforcement. He was a Criminal History Category VI, and received a sentence of 24 months. (3:15-cr-36-SLG).

## CONCLUSION

Mr. Saofaga is still a relatively young man, and a 30-month sentence, given Mr. Saofaga's relative lack of criminal history satisfies concerns related to just punishment. Therefore, a sentence should be imposed that takes into account and facilitates Mr. Saofaga's potential for rehabilitation, and his ability to become a productive member of the community with education and vocational training. A sentence of 30 months is an appropriate outcome in this case. For all of the above state reasons, Mr. Saofaga requests a sentence of 30 months.

DATED this 25th day of October, 2019.

Respectfully submitted,

*/s/ Jamie McGrady*
Jamie McGrady
Assistant Federal Defender
Alaska Bar No. 0405022

Certificate of Service:

I certify that on October 25, 2019, a copy of the foregoing document, with attachments, was served electronically on:

Allison O'Leary, Assistant U.S. Attorney

*/s/ Jamie McGrady*